# IN THE DISTRICT COURT OF THE UNITED STATES
# FOR THE MIDDLE DISTRICT OF ALABAMA
# EASTERN DIVISION

|  |  |
|---|---|
| UNITED STATES OF AMERICA | ) ) ) |
| v. | ) ) CR. NO. 3:06cr141-MEF ) |
| CLAUDE JEROME WILSON, II | ) ) ) |

## Sentencing Memorandum in Support of Probation Officer's PSI Calculations

To aid the Court at sentencing, the United States files the attached sentencing memorandum in support of the Probation Officer's calculated sentencing range.[1] The United States requests that the Court follow the Probation Officer's PSI calculations–they are both factually and legally correct–and overrule Defendant Claude Wilson's objections. Wilson's five objections to the PSI can be lumped into two main objections. Neither should be sustained.

**1.    The Probation Officer Correctly Concluded that Wilson Committed a Felony Crime of Violence in Connection with the Possession of the Handgun In this Case.**

First, Wilson incorrectly argues that he did not commit a felony crime of violence in connection with his handgun possession in this case.[2] The testimony at sentencing, however, will demonstrate that Wilson committed aggravated stalking, a felony under Alabama law,[3] and a crime of violence under the

---

[1] The United States first received Wilson's written objections to the PSI on May 14, 2007. At this point, the United States attempted to meet with and subpoena several witnesses including the victim, Carol Smith. However, because of the incidents related to the alleged stalking in this case, Smith moved, without the United States' knowledge, to a different location out of a fear that Wilson would again find her. The United States was unable to locate and serve Smith with the subpoena until this past Saturday, May 26, 2007. The United States was finally able to met with and interviewed her yesterday afternoon, May 29, 2007.

[2] Corresponding to Wilson's objections to paragraphs 21, 27, 29, and 68 of the PSI.

[3] Ala. Code § 13A-6-91 (1999).

Sentencing Guidelines.[4]

To prove a violation of aggravated stalking, the Government must first show that Wilson "'intentionally and repeatedly follow[ed] or harass[ed]'" his victim[5] and that in so doing "violate[d] any court order or injunction."[6] The testimony at sentencing will show that the victim, Carol Smith, and Wilson previously lived together until on August 27, 1998, when Wilson struck, choked, and robbed her.[7] Smith will testify that Wilson began stalking her from prison and thereafter. On October 14, 2004, Wilson was convicted of the aggravated stalking of Smith in Georgia state court.[8] As part of the judgment in that case, the state court judge plainly listed as one of Wilson's conditions of probation: "Stay away from Carol Smith (victim). Stay away from victim's employment, residence. Absolutely no contact."[9]

The second element necessary to prove a conviction for aggravated stalking is that Wilson made a "'credible threat.'"[10] Here, Wilson did. While dressed in a black leather jacket, black gloves, a black leather cap, and dark sunglasses, Wilson posed for a photograph brandishing a Glock 9mm handgun

---

[4] Wilson is not arguing that Alabama aggravating stalking is not a crime of violence under Sentencing Guideline §4B1.2(a). His objections instead relates to supposed lack of factual proof tying him to placing of the photo into the mailbox. Moreover, even if this were not the case, the Middle District has already declared that Alabama aggravating stalking is a crime of violence under §4B1.2(a). *See United States v. Tignor*, 414 F.Supp.2d 1070 (M.D. Ala. 2006) (Albritton, J.).

[5] *Tignor*, 414 F.Supp.2d at 1073 (citing *Hayes v. State*, 717 So.2d 30, 33 (Ala. Crim. App. 1997)).

[6] Ala. Code § 13A-6-91 (1999).

[7] *See* PSI at ¶36. Wilson was convicted of the aggravated assault and robbery of Smith (nee Davis) on March 5, 1999. *Id.*

[8] *See id.* at ¶37.

[9] Judgment in *State of Georgia v. Wilson,* Case No. SU03CR2234 (Muskogee Cnty. 2004).

[10] *Id.*

-2-

shortly after Christmas Day, 2004. Then, on March 7, 2005, Carol Smith reported to the Lee County Sheriff's Office that the following picture of Wilson had been placed in her mailbox:



The final element necessary to prove a conviction for aggravated stalking is that Wilson "intended to place [Smith] in reasonable fear of death or serious bodily injury."[11] "Although the statute mentions death or serious bodily injury, Alabama courts do not require the State to 'prove that the victim was actually in fear of death or serious bodily injury.'"[12] Regarding the victim's mental state, the Government "is only required to show 'that a victim suffered substantial emotional distress . . . .'"[13] "This lesser showing to prove stalking is consistent with Alabama's 'position that stalking statutes must be interpreted as broadly as possible so as to afford the victim maximum protection.'"[14]

Smith's testimony, however, will be sufficient under any standard. Smith will testify that when she received Wilson's "I found you" letter, she was "scared to death." She also will testify that she suffered substantial emotional distress. Wilson had been stalking her for many years. Based upon her prior experience with Wilson, she knew Wilson's violent tenancies. She will testify that the "I found you" letter was a clear message from Wilson that he had a gun, that he now knew where she lived, and that he intended to harm her or her family. Based upon Wilson's threat, Smith will testify that she and her family moved to a different location out of fear that Wilson may act out on his threats.

Wilson's defense apparently will be that he did not put the "I found you" letter in Smith's mailbox, but his sister, Lisa Graham, did. While Graham will testify that she took a picture of Wilson with a gun to test out a new camera she had received for Christmas, she will, however,

---

[11] *Id.*; *Jones v. State*, 915 So.2d 78, 84-85 (Ala. Crim. App. 2005).

[12] *Tignor*, 414 F.Supp.2d at 1073.

[13] *Id.* (citing *Hayes*, 717 So.2d at 33).

[14] *Id.* (quoting *State v. Randall*, 669 So.2d 223, 227 (Ala. Crim. App. 1995)).

further testify she did so only at his request. She will moreover say that she did not alter the photo in any way, did not print it out, did not put it into anyone's mailbox, and after taking it, frankly did not think much about it. Finally, Graham's testimony will show that Wilson had access to the camera and that Graham had little reason to put the the doctored "I found you" photo of Wilson in someone else's mailbox.

Thus, not only do Wilson's actions meet all of the elements of the Alabama law, the evidence establishes that Wilson had a motive and opportunity to commit this crime. The probation officer's conclusion that Wilson committed a felony crime of violence when he possessed the handgun in this case should therefore be sustained.

2.  **The Probation Officer Correctly Concluded that Wilson Should Not Be Entitled to a Departure for Diminished Capacity.**

Wilson also incorrectly argues that he should be entitled to a downward departure for diminished capacity.[15] While the United States does not dispute Wilson's mental history as it is stated in his PSI, that history, however, cannot support a departure for diminished capacity under Guidelines § 5K2.13 for at least two reasons.

First, Wilson does not even meet the requisite qualifications for a diminished capacity departure. To qualify Wilson must demonstrate "that his *significantly* reduced mental capacity *substantially* contributed to the commission of the offense;"[16] "'such a link, [however,] cannot be

---

[15] Corresponding to Wilson's objection to paragraphs 78.

[16] U.S.S.G. §5K2.13 (emphasis added); *see also Sullivan v. United States,* Case No. 2:05cv272-MHT, 2006 WL 2136040, at *4-5 (M. D. Ala. 2006) (Thompson, J.).

assumed.'"[17] "Significantly reduced mental capacity" means the defendant, although convicted, has a significantly impaired ability to (a) understand the wrongfulness of the behavior comprising the offense or to exercise the power of reason; or (B) control behavior that the defendant knows is wrongful."[18] However, as the defense's own expert report notes, there is "no information to indicate that Mr. Wilson was suffering from severe symptoms of his mental illness during the time frame of the alleged offense."[19] Thus, Wilson does not even meet the requisite qualifications for this departure, and his request should be denied.[20]

Second, even if Wilson were to meet the qualifications for a diminished capacity departure (which he does not), his request must still be denied because (1) "his significantly reduced mental capacity was caused by the voluntary use of drugs,"[21] (2) the facts and circumstances of Wilson's offense indicated a need to protect the public because the offense involved actual violence or a serious threat of violence to Carol Smith,[22] and (3) Wilson's extensive and violent criminal history

---

[17] *Sullivan v. United States*, 2006 WL 2136040, at *4-5 (quoting *U.S. v. Frazier*, 979 F.2d 1227, 1230 (7th Cir.1992)) (further quotations omitted).

[18] U.S.S.G. §5K2.13

[19] Report of Dr. Catherine Boyer at 5.

[20] *United States v. Ferron*, 357 F.3d 722, 724-26 (7th Cir.2004)(denial of downward departure for diminished capacity was proper, despite psychologist's opinion that defendant suffered from anxiety disorder, dependent personality disorder, dysthymia, and drug and alcohol abuse, where psychologist also testified that defendant was competent, knew the difference between right and wrong, and did not suffer from any compulsive disorder that caused her to steal).

[21] *See* U.S.S.G. §5K2.13. As Dr. Boyer notes in her report "Any substance abuse during this time frame [*i.e.*, during the commission of the gun crime] could exacerbate problems with [Wilson's] judgment and impulse control." Report of Dr. Catherine Boyer at 5.

[22] *See* U.S.S.G. §5K2.13.

indicates a need to incarcerate him to protect the public.[23] As Guidelines § 5K2.13 notes, the Court "may not depart below the applicable guideline range if any of these three circumstances are met." Because each of these circumstances exist in Wilson's case and because Wilson does not qualify for the departure in the first place, the Probation Officer's recommendation to deny a departure should also be adopted.

    Respectfully submitted this the 30th day of May, 2007.

                            LEURA G. CANARY
                            United States Attorney

                            /s/ Christopher A. Snyder
                            CHRISTOPHER A. SNYDER
                            Assistant United States Attorney
                            Post Office Box 197
                            Montgomery, Alabama 36101-0197
                            334.223.7280
                            334.223.7135 fax
                            christopher.a.snyder@usdoj.gov

---

[23] *Id.*

## CERTIFICATE OF SERVICE

    I hereby certify that on May 30, 2007, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following: Jennifer Hart

                                      /s/ Christopher Snyder
                                      CHRISTOPHER A. SNYDER
                                      Assistant United States Attorney